Good morning. I'm John Green, Counsel for the Plaintiffs and Petitioners. With me in the courtroom today is Justice Senator Ari Greenwald, my client's President and Vice President, respectively. May it please the Court, I think this case boils down to a fundamental issue, and that is as follows. Does a conversion result when property is delivered with the transferor's intent, excuse me, consent, and that consent is later revoked? Those are the facts that we have here. My client submits that the answer is yes. Now, guaranteed, the defendant here focuses 100% of its argument on the fact that a bailment was created here, and the bailment was not gratuitous, and that is critical here, that the bailment was not gratuitous. Guaranteed took possession of the product. There's no dispute about that. Guaranteed lost the product. There's no dispute about that. In fact, guaranteed charged my client processing fees based upon the estimated creditable value of the product. That's not disputed either. It was only midstream at trial that guaranteed conceded that it could not do that. And at the end of trial, the Court entered a judgment which, in essence, forced guaranteed to return the processing fees that it had charged on the product. Something about this, this was a whole new world to me, how they treat these excess drugs. But as I understood it, as I read it, wasn't it the common practice that everybody understood that the drugs that couldn't be returned were to be destroyed? And that that was what happened here. I'm not sure about common practice, but I do know what the agreement was between my client and guaranteed, and the agreement was with Ms. Martinez that guaranteed that any drugs that couldn't be returned for credit would be returned to Rebel. And if you look at the return policy, which is number 15 in the excerpts of record, there's some critical language here down in the middle, right below the paragraph where it says guaranteed returns takes full responsibility. I'll read from the second sentence. Now, stay with me here. The next paragraph says this guarantee relates only to your product that is immediately creditable in your approved program upon receipt by guaranteed return. There's no dispute that guaranteed determined that this product was immediately creditable. Now, yes, we lost on the breach of contract issue, and that's because the contract that we alleged was that guaranteed promised to get us all the credit. But they didn't do that. It basically got us no credit. The only return we got, if you will, is that we ended up settling with the manufacturer, Mylan, and the destructing company, Stericycle. The analysis then proceeds to the next stage, which is don't they owe us the acquisition cost of the product? By their own policy, they do. Because question, did guaranteed determine that the Mylan product was immediately creditable? Answer, yes, they did. Did they lose the product? Yes, they did. Now, they have their reasons why they lost it, but nevertheless, they lost the product. It went off to be destroyed. Now, I think the Moore and the Buyer cases control here. Moore says that conversion is a strict liability tort, and Buyer says guaranteed's intent and their motive are irrelevant. The analysis, I submit, should have ended with Moore and Buyer at the trial court level. But the district court judge went one step further. She looked at the motive. She looked at the intent. And guaranteed relies upon cases that support that. For example, the George case. Guaranteed says this case stands for the rule that where a voluntary bailment is created and goods cannot be redelivered because of the bailee's negligence, there is no conversion. Do I agree with that? Yes. As a statement of law, that is an accurate statement. Why does that not apply here? Because there was no finding of negligence. In fact, we didn't sue for negligence. Counsel, can you explain to me where your damages lie in this case? The damages lie in my client's monies expended to acquire the product, which are roughly $314,000. That figure is undisputed. Well, yes, but isn't the manufacturer the only party that can actually decide whether the product can be returned? Ultimately, yes. And is there proof that the manufacturer would have taken these products back? The manufacturer doesn't actually handle the products ever again. Well, that wasn't my question. Because if they would not have taken them back, then you were simply out the money. Do you understand what I'm saying? I understand the question. That's the process of this case. We shouldn't be out the money. At the point that it became obvious to Guarantee that they could not get the credit that they had promised to Rebel, Guarantee had an option. They had two choices. Either one, give us the stuff back, basically. Give us the product back. Or two. But if you couldn't return it either, isn't it worthless at that point? Not true, no. In this industry, as Justice Fletcher just pointed out, it's an interesting industry. It's a very esoteric industry. In this industry, there's approximately 15, maybe 18 reverse distributors, just like Guarantee, all vying for my client's business. So when Guarantee promises, we can get these credits for you, my client chooses them over 15, 16, 17 other companies that could be doing the same thing. So the short answer to your question is, what would my client do with the product? Well, all of that still begs the question, if there's no proof that the manufacturer would have taken it back from any of these 14, 15, 16, 17 intermediaries, then there's still no harm. So that's what I'm getting at. Is there any demonstration that through some intermediary, this product could have been returned for credit? I don't believe that we would have to show that for two reasons. One, we never got the product. Was that a no? Then you're saying there's no proof of that. There is no proof of that. Okay. Because I don't believe proof is required for two reasons. One, we never got the product back, so we never had the opportunity. And two, Guarantee's own policy says if we told you it was immediately creditable and then we lost the product or it was destroyed, we're going to give you your acquisition cost. That's essentially the fallback position that the judge should have chosen was then that they at least get the money that they paid for the product. And under the George analysis, which is advanced by Guarantee, the reason why George is not on point is because the court in George said you can't have it both ways. You can't have negligence and conversion. And in George, the plaintiff sued for both, negligence and conversion. At the end of trial, the judgment was for both. So on appeal, the court said if you've got negligence, then we're not going to give you conversion too. And Simonian is also relied upon by Guarantee. Simonian, unfortunately, focuses on intent. And under Moore and Beyer, that intent is not relevant. So again, we go back to Guarantee's own published policy, which says if we told you it was immediately creditable and we didn't give the stuff back to you for whatever reason, then at a minimum we owe you how much you paid for it, the $314,000. Let's not lose sight of the fact here that Guarantee does this for a profit. Guarantee is hired to do a service. Guarantee makes profit off of this. There's no dispute that Guarantee made lots of money off my client, not just this transaction but the other earlier transactions. Guarantee is a bailment for a hire. So we can analyze this based upon the return policy of Guarantee or we can analyze it under the case law. Either way, I believe the correct result is Guarantee must give back my client the value of the goods. And we know what the value of the goods are. It's how much they paid for them. Now, if you've gotten those goods back, you couldn't have done anything with them. Is that right? I would have given them to Company X or Company Y or Company Z or any of the other 15 to 16 companies that are reverse distributors. Well, would they have had the same luck? It's not returnable. I don't know that they would have had the same problem. And I don't believe there's evidence in the record that it was not returnable. In fact, the evidence at trial was that for whatever reason, Guarantee was not getting the green light was the testimony, the green light from Milo. In fact, even at trial, if you'll notice in excerpts of record, it is 38. Who actually destroyed the product? I'm sorry? Who destroyed the product? It was sent on by Guaranteed Returns to Stericycle Returns. Excuse me, Stericycle. And Stericycle destroyed the product. Even at trial, if you look at excerpts of record. For what reason did they give for destroying? Did Stericycle give for destroying the product? I don't believe there's any evidence in the record of why Stericycle destroyed it. But it was understood that when Guaranteed sent it to Stericycle that it would be destroyed. Interestingly enough, even at trial, Your Honors, if you look at 38 in the record, excerpts of record 38, at trial Guaranteed still believed that the $773,000 in credit should have been forthcoming. If there's no further questions, I'd like to reserve. Yes. All right. Court, I'm Roy Rifkin for defendant in Appalachian Egos Limited. Listening to counsel's argument, it sounds like the plaintiff is re-arguing this as a breach of contract action. Acknowledge that breach of contract causes of action lost at trial. There is no breach of contract action that has been appealed as part of this appeal process. It is strictly a conversion claim that is being appealed. So reference to what's in the manufacturer's references to the manufacturer. Well, on conversion, the argument is, as I understand it, we gave you our stuff, and you were supposed to do something specific with it or return it to us, and you didn't either. You destroyed it. And therefore, we're owed something in conversion. That is the argument, Your Honor, and there are a number of faults with that argument, both factual and legal. Number one, my client did not destroy the product. My client sent the product to the manufacturer's agent, that is SteriCycle. My rank was the manufacturer. SteriCycle is their designated agent for return of product. They did that in accordance with their appropriate and normal practices, as that product showed on my land and SteriCycle's published information as should be returnable. It was acknowledged, this is in the supplemental excerpts of the record at pages 59 and 60, acknowledged by Rebel at trial that what DeVos did with the product was absolutely proper. They did nothing wrong whatsoever. They did exactly what they're supposed to do, and everybody involved in the process understands that when product is returned to the manufacturer or their agent, it is destroyed because the manufacturer doesn't want out-of-date or in any way compromised product out on the market. So my client did nothing wrong, and that's the essence of this case, because plaintiff is now arguing, and plaintiff argued at trial unsuccessfully, that there can be a cause of action for conversion when there has been absolutely no fault whatsoever on the part of the defendant. Counsel completely misconstrues the George v. Beacons case. It's a Supreme Court of California case. Justice Treanor wrote the opinion. Counsel suggests that that case stands for the proposition that it can be negligence or it can be conversion, but not both. The case says nothing of the sort. The case says that a Bailey cannot be liable for conversion in the absence of fault, even if the Bailey has acted negligently. In our case, there was not even any evidence that anyone on the defense side acted negligently. Not even that. So I understand when counsel said we haven't argued negligence. There was no finding of negligence. There was no finding that DeVos did anything wrong whatsoever, and in fact, it was acknowledged on the record and the court found below that DeVos had done nothing wrong, had not breached a contract or written, and had not done anything wrong in sending the product on. Counsel, you made the statement that when you send the product to the agent of the manufacturer, that it's for the purpose of destroying it. Now, wasn't some product returnable and some had to be destroyed? Isn't that what goes on? Even product that is returnable for credit is destroyed. And the reason it is credited is because the manufacturers want to make sure their product is turned over. They don't want pharmaceuticals on the shelves of pharmacies that are out of date or approaching out of date. So they set certain standards, and I guess as an accommodation to the retailers and in some cases the distributors, they will take that product and give credit. And presumably the retailers are now buying new Advil and new Tylenol to put on their shelves. But that product is, as a matter of course, destroyed. So what's really at stake is whether the manufacturer is willing to pay for some of this. Not that it won't be destroyed, but the question is, will they pay? Correct. And that's the essence of this case from the outset. Plaintiffs sued, in addition to my client, sued Stericycle and Mylan. They settled, right? They settled on the eve of trial. We admitted at all times that based on the information that we had, and it was the same information that plaintiff had, that Mylan should have given credit for this product. That's why it was sent on, as opposed to advising plaintiffs at the outset that it didn't appear that this product was credited. I have a question about the other issue in the case, which is costs. The judgment awarded money to Rebel and ordered your client to pay some $60,000 for breach of an oral contract. So the bottom line judgment, although smaller than hoped, went against your client. And yet the district court, under Rule 54, awarded costs to your client as the prevailing party. Are you aware of any Ninth Circuit case that allows costs to be awarded in favor of the party against whom a money judgment is entered? I am not certain. I know we cited in other cases. Some of which seem more relevant than others. But I was not able to find such a case in the Ninth Circuit. To my recollection, Your Honor, there was not a Ninth Circuit case that was on the case. But the general concept that I think is consistent throughout the circuits is that it is a judgment call by the party. The question of who is the prevailing party in the strictest sense under Rule 54, I guess I have difficulty saying that the party against whom the judgment is entered who has to pay the other side a significant sum of money is the prevailing party in the litigation as a whole. It's common to say nobody gets costs because you didn't get really what you sought. But I just have found nothing that interprets Rule 54 that way. I understand. And allow me perhaps to address that by relating to the context, relating back to the context of the case, Your Honor. And I'll ask the Court, please recall that Mylan and Stericycle were sued. In theory, the day of trial, Mylan and Stericycle could have paid 100 cents on the dollar of what the claim was and acknowledged that all of this should have been returnable, in which case there would have been no adjustment in my client's fee. The amount that we acknowledged at trial was owing back was an adjustment in the commission that my client gets for successfully returning the product. Okay? Now, until the claims against Stericycle and Mylan were liquidated, there was no way to determine whether or to what extent there would be any adjustment appropriate. All that has to do with is how much your client breached their contract. And it turned out to be a relatively small amount. But nonetheless, they breached the contract and a judgment was entered against them. But what I think the Court below understood was that up until the finalization of that settlement, there was the possibility that my client didn't breach the contract at all, that all of the commission that had been retained would have been earned. Again, if Mylan had fessed up and said, okay, we'll write you a check for it. Well, in that event, you would have been the prevailing party because there would have been no judgment. So all of that is interesting, but I just, conceptually, I just have difficulty with this idea that one party has to pay the other and yet they're the prevailing party. I just have never seen that in our circuit. I've seen it in state courts, Your Honor, through trial practice. I certainly understand the Court's feeling that it's a little bit on its ear. But we submit that it is entirely appropriate in the context here, under the facts here, and that it was certainly not an abuse of discretion on the part of the lower court to allocate costs as it should. And the standard is clearly an abuse of discretion standard. Is that true as to the determination of who is the prevailing party? Is that a question of law or is that a discretionary question? I believe that determination of prevailing party is reviewed for abuse of discretion, and that is the Berglo versus Correll Corporation. And I believe that my reference to that is specifically on determination of prevailing party distinct from an allocation of costs. So how much is paid toward the loss that's alleged? Well, that's a complicated question, Your Honor. Plaintiff submitted as a package some amount in seven figures of pharmaceuticals for return. It was a significant amount. That included pharmaceuticals that were sent to a number of manufacturers, not just my lab. There was a fair amount, I believe well into six figures, of credits that were, in fact, provided. Manufacturers that did accept back returned pharmaceuticals and did issue credit and paid money. How about the product involved here? What was left from my lab, they paid none of it until their settlement just before trial that I believe was some amount in excess of $100,000. So the recovery of the my lab product that was at issue in this case, I suppose, would be the settlement amount that the plaintiff received on the eve of trial, and as I said, that was an amount somewhere in excess of $100,000. If you're found liable, would that ameliorate the amount that your client would have to pay? Yes, Your Honor. Without acknowledging for a minute that there should be any liability here, we, part of our pretrial order and our briefing to the court was to the effect that anything the plaintiff received in settlement would be an offset to any claim that was made against us. But that proved to be irrelevant. And what was the reason your client didn't get credit for the product that was destroyed in this suit, in this case? Your Honor, I think that question would have to be asked of my lab, of the manufacturer. We can speculate, and there probably, as I recall, at trial was some speculation as to where my lab was coming from when they denied credit for a product that appeared from their published policies before that would be entitled to credit. But that was really a question that should have been asked. In sum, we submit that the plaintiff is asking this court, in essence, to find that as a matter of law, as a matter of California law, as related to the facts of this case, there can be liability for conversion without any fault whatsoever on the part of the defendant, even in the absence of any negligence. We submit, Your Honor, that the court below was entirely correct in essentially rejecting that premise. And we suggest that the judgment from below should be confirmed, should be affirmed in its entirety.  Thank you, Your Honor. Thank you. Thank you for this time. We know that credit should have come because based upon Mylan's published policy at the time the product was returned, credit should have come. There was no determination made at trial why Mylan would not issue credit and guaranteed always maintained at trial, rightfully so, that they believe the credit should be forthcoming to. Your Honor has just inquired of counsel how much is due. Well, how much is due here depends upon how you look at it. The figure, by the way, that was paid by Mylan Stericycle was $110,000. And that's in the record as well. An order determining good faith was made. Rebel paid $314,000 for the product, and I can see they'd be entitled or guaranteed would be entitled to an offset of $110,000 for that. So we know how much is due. Counsel suggests that there was no way for guaranteed to know until trial how much they would have to pay. But that's not entirely true because if you look at their return policy, and this is critical, excerpt of the record 15, it states right in the middle, it's standing out from every paragraph, the service fee is deducted from actual credits. And this is another crux in this case. Guaranteed all along had retained processing fees, their service fee, based upon estimated credits. It wasn't until trial that they changed their proverbial story and said, you're right, our policy says actual credits, so here's what we're going to do. We're going to actually make a refund to you. And that's essentially what the judgment did. It compelled them to make a refund. Did Demos destroy the product? Did it physically touch it and throw it into an incinerator? No. Did Guaranteed physically destroy it? No. But they sent it on to Stereocycle in boxes with instructions to destroy it. They stepped into action in the course of events, which caused the destruction of the product. Once they knew, on March 22, 2007, when Rebels said, if you can't get credit, give us our stuff back. Once they knew that, they had a choice. Either pay them the acquisition cost according to their published policy, or give them the product back. And your honors bring up an interesting point, which is the second point of the appeal. How was it that my client, which obtained a net monetary recovery, was then tagged, for lack of a better word, with Klaus? I don't know. I have not found any Ninth Circuit law on point. I found the Barber case in the Tenth Circuit, which I highlighted in the brief. The closest Ninth Circuit case is Hashimoto, which says that a party doesn't need to prevail on every issue to be considered the prevailing party. Well, we prevailed on the only issue. The only issue was, do you owe us money? And the judge said, yes, you do owe money. I don't know how close the cost award was entered against us, but I submit that is an abuse of discretion. Do your honors have any questions for me? No, I don't believe so. In that case, I appreciate your time. Thank you. Thank you. Chobar v. United States.
judges: Fletcher B. , Pregerson, Graber